FILED

2023 Jun-07 AM 11:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **KEITH DEJUAN ODRICK,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **7:20-cv-8015-LSC** |
| | ) | **7:19-cr-00030-LSC-LEO-1** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OF OPINION

### I.  Introduction

Pursuant to 28 U.S.C. § 2255, Petitioner Keith Dejuan Odrick ("Odrick") filed with the Clerk of this Court a motion to vacate, set aside, or otherwise correct his sentence of 68 months' imprisonment and 3 years of supervised release. (Doc. 1.) The United States responded in opposition to the motion. (Doc. 17.) For the reasons set forth below, Odrick's § 2255 motion is due to be **DENIED** without a hearing in part. The Court will hold a limited evidentiary hearing to resolve the remaining portion of his motion.

### II.  Background[1]

---

[1]  As he admitted in his brief, (*see* doc. 2 p. 3), Odrick agreed under oath at the time of his plea that these background facts were accurate.

At around 2:50 a.m. on September 15, 2018, a Tuscaloosa police officer observed a Honda Accord parked strangely on an abandoned lot with its driver's-side door open. The officer drove his patrol car behind the Accord, turned on his blue lights, and exited his vehicle to engage the driver. At that moment, the driver shut the car's door and began to drive away but stopped soon after because of a flat tire. Odrick—the driver and only person in the car—got out.

The officer and Odrick began to talk. Odrick's breath smelled as if he had recently been drinking an alcoholic beverage, the smell of marijuana emanated from his car, and his pupils were dilated. Odrick denied having consumed either substance, but with what he was seeing and smelling indicating otherwise, the officer had Odrick perform a series of field sobriety tests. As was recorded on the officer's body camera, Odrick performed poorly on several of these tests. For example, Odrick took long steps and tipped to the side on several occasions during the heel-to-toe exercise. Odrick was arrested for driving under the influence of alcohol.

Odrick's federal charges came from what was found inside the car. Before it was towed, a second police officer performed an inventory search of Odrick's car. The officer found a CENTURY ARMS 7.62 x 39mm pistol, serial number RAS47098782, and a curved magazine loaded with 40 rounds of ammunition in the back floorboard, and a loaded 70-round drum magazine in the front passenger

floorboard. The pistol was examined by ATF Special Agent Brantley, who determined that it both qualified as a "firearm" under federal law and was manufactured or assembled in Vermont, confirming that it had traveled in interstate commerce. Brantley also examined the ammunition, all of which was manufactured by Tulammo, and determined that it qualified as "ammunition" under federal law and was manufactured in Russia, and thus had traveled in international commerce. Because Odrick had been convicted on November 19, 2014, in the Circuit Court of Tuscaloosa County, Alabama, of the offense of Unlawful Distribution of a Controlled Substance, case number CC-2014-2230, he was a felon at the time he possessed that firearm and ammunition on September 15, 2018.

Odrick was indicted for being a felon in possession of a firearm. Attorneys from the Federal Public Defender's Office represented him at his initial appearance and arraignment. On February 13, 2019, the Court issued a standing discovery order and a scheduling order setting, among other deadlines, March 5, 2019 as the last day for the parties to file pretrial motions. The Government provided discovery to Odrick's counsel on February 21, 2019.

Then, on March 5, 2019, Odrick retained Counsel Joshua J. Swords ("Swords")—who had been representing him on the related DUI charge in Tuscaloosa City Court for several months—to represent him on the federal charge.

(Doc. 13 Ex. 15). On March 21, 2019, Swords filed a notice of appearance in the federal case, (Cr. Doc. 12 Ex. 7),[2] and the Government sent him a courtesy copy of all the paper discovery and photographs the next day. (Doc. 13 Ex. 8). On March 28, 2019, the Government filed a Superseding Indictment, adding the ammunition within the single count that already included the firearm. (Cr. Doc. 15 Ex. 16).

On April 10, 2019, the parties appeared for trial. But before the trial began, Swords advised the Government that Odrick wished to plead guilty and accept responsibility. After being arraigned on the Superseding Indictment, Odrick pled guilty to the single count of being a felon in possession of a firearm and ammunition. (Cr. Doc. Ex. 9).

On July 29, 2019, this Court sentenced Odrick to 68 months, which was within the sentencing guidelines range of 63 to 78 months calculated by the probation office and adopted by the Court. (Cr. Doc. 24 Ex. 13); (Cr. Doc. 28 Ex. 14, p. 14).

### III.   Timeliness and Non-Successiveness of Odrick's § 2255 Motion

Odrick filed his § 2255 motion alleging ineffective assistance of counsel on May 4, 2020 and the Clerk of this Court entered the motion the next day, making his filing timely. *See* 28 U.S.C. § 2255(f)(1). Further, this Motion is his first § 2255 motion, so it is not "second or successive" within the meaning of the Anti-

---

[2]       "Cr. Doc." refers to an entry on the docket sheet in the underlying criminal case, *United States v. Odrick*, No. 7:19-cr-00030-LSC-LEO-1

Terrorism and Effective Death Penalty Act of 1996. *See* 28 U.S.C. at §§ 2255(h), 2244(b)(3)(A).

## IV.    Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are limited. A petitioner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)).

In litigation stemming from a § 2255 motion, "[a] hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the [movant's] allegations are affirmatively contradicted by the record." *Holmes v. United States*, 876 F.2d 1545,

1553 (11th Cir. 1989) (quoting *Guerra v. United States*, 588 F.2d 519, 520–21 (5th Cir. 1979)). However, an evidentiary hearing is appropriate if, "accept[ing] all of the petitioner's alleged facts as true," the movant has "allege[d] facts which, if proven, would entitle him to relief." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (quoting *Agan v. Dugger*, 835 F.2d 1337, 1338 (11th Cir. 1987) and *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989)).

## V.    Discussion

Liberally construing his § 2255 petition,[3] Odrick argues that he received ineffective assistance of counsel at three stages: pretrial, sentencing, and post-conviction.

Claims of ineffective assistance of counsel may be raised for the first time in a § 2255 motion and are therefore not subject to procedural bar for failing to raise them on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). An ineffective assistance of counsel claim requires showing deficiency and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficiency requires the petitioner to "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Prejudice requires the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

---

[3]    This Court liberally construes Odrick's pleadings because he is a *pro se* litigant. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

would have been different." *Id.* at 694. If a petitioner fails to show deficiency, the court does not need to address prejudice. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

In examining counsel's performance, the Court should be "highly deferential." *Id.* at 689. The Court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* The Court must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*; *see Bell v. Cone*, 535 U.S. 685, 702 (2002) (holding that "tactical decision[s] about which competent lawyers might disagree" do not qualify as objectively unreasonable). A petitioner who seeks to overcome this presumption does not carry his burden by offering bare accusations and complaints; rather, he "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

### A. Post-Conviction Counsel.

Odrick asserts that his post-conviction defense counsel's performance was constitutionally deficient because Swords failed to file a notice of appeal despite Odrick requesting him to do so. In support of this assertion, Odrick writes in his brief

that he "wanted to appeal but Swords discouraged him and said that 'that would give you more time.'" (Doc. 2 p. 21). However, Swords testified by affidavit that Odrick "never asked if he could appeal his case in whole or in part." (Doc. 10 p. 6).

Odrick waived certain rights when he entered into his guilty plea, but he did not waive the right to raise a claim of ineffective assistance of counsel on appeal or on collateral review. A criminal defense lawyer is not under a *per se* constitutional obligation to consult with his or her client about an appeal. *Otero v. United States*, 499 F.3d 1267, 1270 (11th Cir. 2007). However, the Eleventh Circuit has held "that a lawyer who disregards instructions from his client to appeal has acted 'in a manner that is professionally unreasonable.'" *Gomez-Diaz v. United States*, 433 F.3d 788, 789 (11th Cir. 2005) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). In that situation, the petitioner does not have to establish prejudice beyond showing that but for counsel's deficient conduct, he would have appealed. *Id.* at 792-93; *Flores-Ortega*, at 486, ("[I]t is unfair to require an indigent, perhaps *pro se*, defendant to demonstrate that his hypothetical appeal might have had merit . . . Rather, we require the defendant to demonstrate that, but for counsel's deficient conduct, he would have appealed."). Further, the appeal waiver does not establish an absence of prejudice for ineffective assistance purposes. *See Gomez-Diaz*, 433 F.3d at 793 (favorably citing *United States v. Garrett*, 402 F.3d 1262, 1266-67 (10th Cir. 2005)

(holding that although the defendant's "appellate rights have been significantly limited by his waiver, . . . the waiver does not foreclose all appellate review of his sentence. If [the defendant] actually asked counsel to perfect an appeal, and counsel ignored the request, he will be entitled to a delayed appeal. This is true regardless of whether, from the limited perspective of collateral review, it appears that the appeal will not have any merit.")).

Here, whether Odrick requested Swords to appeal cannot be resolved on the existing record. The Court will thus hold a limited evidentiary hearing on this issue. Odrick is advised that, should this Court find in his favor after an evidentiary hearing is held, the only relief available to him is the ability to file a delayed direct appeal.

### B.    Pretrial Counsel.

Odrick asserts that Swords provided him constitutionally deficient counsel at the pretrial stage and claims that if he had received constitutionally sufficient counsel, "he would definitely have opted to proceed to trial." (Doc. 2 p. 11). This claim is based on Odrick's assertions that Swords failed to: (1) communicate with him and correctly inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial; (2) file any substantial pretrial motions; (3) conduct an adequate and independent pretrial investigation; and (4) attempt to negotiate a favorable plea agreement. (Doc. 2 p. 8). These assertions are

meritless, and this claim is thus due to be dismissed without a hearing.

A defendant's guilty plea cuts off claims of ineffective assistance of counsel in pre-plea representation, meaning that a petitioner can only claim that his pre-plea representation caused him to enter an unknowing or involuntary plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Stano v. Dugger*, 921 F.2d 1125, 1150 (11th Cir. 1991). "Where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 53, 56 (1985)(quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970). To establish prejudice in this context, a movant must establish that, but for his counsel's unprofessional errors, "he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. In the guilty plea context, there is a strong presumption that an attorney's actions are reasonable. *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348–49 (11th Cir. 2015). "We recognize that in deciding whether to enter a plea, defense lawyers carefully balance both 'opportunities and risks' without fully knowing the strength of the [prosecution's] case. Therefore, we must, as we do for all *Strickland* claims, afford 'substantial deference' to a lawyer's strategic choices." *Id.* (citing *Premo v. Moore*, 562 U.S. 115, 124 (2011)). "[S]trategic choices made after thorough

investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, at 690–91. The defendant must show "that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

The record plainly demonstrates that Odrick freely, knowingly, and voluntarily entered into the Plea Agreement. The Court's colloquy with Odrick before he pleaded guilty evinces that fact. *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994)("There is a strong presumption that the statements made during the colloquy are true."). In Odrick's colloquy, he claimed that he: (1) could read, write, and understand the English language; (2) attended some college; (3) had read his Guilty Plea and Advice of Rights Certification and reviewed it with Swords, who explained it to him; (4) had no complaints about Swords' representation; (5) understood that the guideline range was advisory and he also understood that the court and his lawyer could not tell him what the guideline range would be at the time of his plea; (6) understood the statutory range of punishment for the charged crime; and (7) agreed that Swords talked with him about statutory and guideline ranges of punishment. (Doc. 13 Ex. 12).

Moreover, that Odrick freely, knowingly, and voluntarily entered into the plea agreement is further evinced by the fact that the Court reviewed the Plea Agreement with Odrick. Before the Court accepted the guilty plea, Odrick confirmed that he had reviewed the Plea Agreement with his counsel, he had initialed each page as he reviewed it, the various signatures on the document were his, the document was the entire agreement between him and the Government, he had not been coerced into pleading guilty, and he understood that he did not have to plead guilty. (Cr. Doc. 27 Ex. 12).

Further, Odrick's Plea Agreement contains disclosures putting him on notice of the true facts of his case, of which he now claims he was not informed. Specifically, the plea agreement discloses that: (1) he would "be awarded an appropriate reduction in the offense level for acceptance of responsibility but not the one-point reduction found in U.S.S.G. §3(E)1.1(b)" for timely notification of intent to enter a plea; (2) his guidelines would "be determined at the sentencing hearing;" (3) the sentencing guidelines were advisory, not mandatory, and in the court's discretion; and (4) the sentencing recommendation was not binding on the court. (Cr. Doc. 19 Ex. 11).

Finally, at the top of the page containing Petitioner's concluding signature, the following appears in bold and all caps: "**NO OTHER PROMISES OR**

**REPRESENATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE . . . TO INDUCE ME TO PLEAD GUILTY."** (Cr. Doc. 19 Ex. 11 p. 14).

Based on this record, the Court can conclude that the counsel Odrick received from Swords did not cause him to enter into his Plea Agreement unknowingly or involuntarily. Odrick's attempts to show otherwise are unavailing. Regardless, the Court will discuss his four arguments.

### 1.    Circumstances and Consequences.

First, Odrick asserts that his pretrial counsel failed to "inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial." (Doc. 2 p. 8). This argument is unsupported by any factual allegations, namely, what those circumstances or consequences were and how they would have affected his decision to enter the Plea Agreement. Most of the allegations that Odrick attempts to use as support are either conclusory[4] or generalizations,[5]

---

[4]    Odrick alleges that Swords failed to provide "reasonable communication from the beginning of his case," claims that Swords "did not meet the standard as set forth above in Rule 1.4 of the Alabama Rules of Professional Conduct or any other professional norm for that matter," states that Swords "failed to reasonably consult with [him] about the means to be used to accomplish his objectives," and claims that Swords failed to "fulfill reasonable client expectations for information consistent with the duty to act in the client's best interest." (Doc. 2 pp. 9-10).

[5]    Odrick alleges that Swords (1) "never informed [him of] anything regarding his case;" (2) "failed to provide sufficient information to [him] so that he could participate intelligently in

neither of which can support his claim. *See Holmes v. United States,* 876 F.2d 1545, 1553 (11th Cir. 1989)(quoting *Guerra v. United States*, 588 F.2d 5120-21 (5th Cir.1979) ("A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations."); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)(quoting *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir.1990) (en banc) ("A petitioner is *not* entitled to an evidentiary hearing, however, 'when his claims are merely 'conclusory allegations unsupported by specifics.'")

The only actual factual allegations Odrick uses to support his first argument are that "there was very little communication between [him] and Swords," that "most of the time, he would not get an answer" when he would call Swords, and that "he would not receive a return call" if he left a message. (Doc. 2 p. 9). These allegations, without more, are insufficient to show deficiency, as the right to counsel does not include a right to speak to counsel whenever a client pleases. *See United States v. Calderon*, 127 F.3d 1314, 1343 (11th Cir. 1997). Instead, the right to counsel only requires enough communication between attorney and client to provide adequate representation. *Id.* (holding that right to counsel is violated only when there

---

decisions concerning the objectives of his representation and the means by which they would be pursued;" (3) "failed to consult and explain the general strategy and prospects of success and the likely result in the sentence he would receive;" and (4) failed to "fulfill reasonable client expectations for information consistent with the duty to act in the client's best interest." (Doc. 2 p. 10).

is "a total lack of communication between the defendant and his counsel thereby preventing an adequate defense.") Odrick's allegations of less communication than he wanted do not prove so much. These allegations also fail to demonstrate prejudice because, without more factual context, Odrick failed to allege that more communication could have changed the outcome of his proceedings.

In addition to Odrick's first argument lacking any factual allegations supporting it, the argument is also inconsistent with Odrick's own sworn statements in his brief. Odrick himself conceded in his brief that Swords explained to him: (1) that the gun found in his car was too big for Odrick to claim that he did not know it was there; (2) the possible sentencing enhancements, including those from the fact that the gun and ammunition were found in a car; (3) that they likely would not prevail in trial; (4) that taking the plea offer would allow a chance to "talk them down from 68 months to . . . 36 months"; and (5) that accepting the plea would provide a sentence reduction for acceptance of responsibility and removal of Odrick's youthful offender points. These concessions paint a history far different from what Odrick now claims. Clearly, Swords and Odrick discussed the specific consequences of pleading guilty, the risks of going to trial, and potential defense strategies.

That history is fully supported by Swords' affidavit testimony, which details his interactions and discussions with Odrick regarding the evidence, a potential trial

strategy, and the plea agreement. (Doc. 10). In his affidavit, Swords describes his pre-existing relationship with Odrick as counsel on the related DUI charge in municipal court (¶¶ 1-2), his discussions with Odrick about the discovery materials (¶¶ 4-5), his discussion with Odrick about potential defense strategies and mitigation information (¶ 8), Odrick's criminal history (¶ 9), Swords' efforts to obtain the most favorable plea terms (¶ 10), the attorney-client discussions related to the decision to plead guilty (¶¶ 11-12), the line-by-line review of the Plea Agreement (¶13), his efforts after the plea to create an opportunity for Odrick to assist in other cases and obtain a reduced sentence (¶ 17), and his discussions with Odrick regarding the details of the presentence report and their strategy for the sentencing hearing (¶¶ 16-20). Odrick does not allege specific facts contradicting Swords' claims, instead only providing "unsupported generalizations," *Holmes*, at 1553, and "conclusory allegations unsupported by specifics." *Tejada*, at 1559.

In sum, Odrick's claim that his pretrial counsel failed to inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial is "affirmatively contradicted by the record." *See Holmes*, at 1553. Therefore, an evidentiary hearing on this issue is not warranted. *See id.*

### 2.      Substantive Pretrial Motions.

Second, Odrick claims that he received ineffective assistance of counsel because Swords did not file any substantive pretrial motions. As a threshold matter, like his first argument, his second is mostly supported by unhelpful "unsupported generalizations," *Holmes*, at 1553, and "conclusory allegations unsupported by specifics." *Tejada*, at 1559. For example, Odrick claims that Swords' failure to file substantive pretrial motions resulted in Odrick being "unable to obtain the discovery that he needed to . . . make an informed decision on whether to plead guilty or proceed to trial." (Doc. 2 p. 11).

The only actual factual allegation Odrick made in support of his second argument is his claim that Swords did not file any substantive pretrial motions. However, an attorney's failure to file pretrial motions itself does not demonstrate deficiency, *see Brownlee v. Haley*, 306 F.3d 1043, 1060 (11th Cir. 2002)(holding counsel's failure to "file any discovery motions. . . did not fall outside the wide range of professional competence"), especially where, as here, that attorney was retained on the date of the pretrial motion deadline.

Moreover, neither the record nor Odrick's allegations indicate any grounds for pretrial motions. Swords testified in his affidavit that he and Odrick reviewed the discovery documents provided by the Government on February 13, 2019. (Exs. 5, 8, and 15 ¶ 4). Odrick alleged no facts contradicting that testimony and alleged no facts

indicating circumstances warranting a pretrial motion related to that discovery. As for suppression motions, again, neither the record nor Odrick's allegations indicate any grounds for a motion to suppress.

Even if Odrick's allegations did support his claim that Swords' decision not to file any substantive pretrial motions amounted to deficient performance, Odrick's allegations do not indicate prejudice. Specifically, there are no factual allegations, nor evidence in the record, indicating that that Swords' decision not to file any pretrial motions resulted in Odrick entering an unknowing or involuntary plea. Instead, Odrick's brief contains mere conclusory allegations, unsupported by specific facts. (*See, e.g.* doc. 2 p. 11)("Had Odrick been given the discovery in order to assess and evaluate the government's case-in-chief, he would definitely have opted to proceed to trial.").

It is difficult to imagine any allegations that could carry that burden where, as here, the simplicity of this case is so evident from its undisputed factual narrative. In sum, Odrick's second argument fails because neither the record nor his allegations indicate that Swords' decision not to file any substantive pretrial motions amounted to deficient performance or resulted in prejudice.

### 3.    Pretrial Investigation.

Third, Odrick asserts that Swords failed to conduct an adequate independent pretrial investigation. The Supreme Court has explained that the "prejudice" inquiry for claims alleging a failure to investigate asserted by defendants who pled guilty "will closely resemble the inquiry for . . . ineffective-assistance challenges to convictions" at trial. *Hill*, 474 U.S. at 59. "For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Id.* Thus, analyzing whether counsel's investigation prejudiced a petitioner requires an "assessment . . . that will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill*, 474 U.S. at 59.

Odrick's allegations, even if assumed to be true, fail to show that any further investigation by pretrial counsel would have unearthed evidence that either would have led Swords to change his recommendation as to whether Odrick should enter the Plea Agreement or would have led Odrick to decide to go to trial. Importantly, Odrick does not claim that potentially exculpatory evidence has been discovered after the plea that Swords should have found. Instead, for the most part, Odrick makes generalized and conclusory claims that Swords failed to conduct an

independent investigation.[6] As far as arguments based on actual factual allegations, he makes five. Each of these arguments are meritless for the reasons stated below.

First, Odrick claims that Swords failed to discover that his brother owned the gun. That claim is flatly contradicted by Swords' undisputed affidavit testimony, which describes conversations between Swords, Odrick, and Odrick's brother discussing ownership of the gun and the viability of a defense based on the brother owning the gun. (Ex. 15 ¶ 8). Odrick alleged no facts contradicting that testimony. Moreover, Odrick's claim is largely irrelevant, because ownership of the gun is not an element in the crime Odrick was convicted of and the Court is unaware of how the ownership of the gun would have changed Odrick's decision whether to plea or not.

Second, Odrick claims Swords failed to discover that he did not know that his car had a firearm or ammunition in it. This argument fails to show deficiency because it is affirmatively contradicted by the record. The record demonstrates that Swords *did* investigate whether Odrick knew that the gun and ammunition was in his car, evident by Odrick's statement that Swords told him that "the gun [was] too big to not know that it was in the car." (Doc. 2 p. 9). That testimony is corroborated by

---

[6]     Odrick alleges that "Swords failed to research the case law, interview witnesses, or investigate the facts of [his] case. There was no independent pretrial investigation to challenge the government's case-in-chief. Swords failed to move the Court for a private investigator to independently investigate his case." (Doc. 2 p. 12).

Swords' undisputed affidavit testimony describing conversations between Swords, Odrick, and Odrick's brother discussing the fact that it would be "almost impossible for [Odrick] to claim that he had no knowledge that" the firearm and ammunition was in his car due to their size and where they were found inside the car. (Ex. 15 ¶ 8).

Third, Odrick claims Swords failed to discover that, because he was never sent to prison for his prior conviction, he "had no idea that he belonged to the relevant category of persons barred from possessing a firearm." (Doc. 2 p. 13).[7] This argument is meritless. The Supreme Court's opinion in *Rehaif v. U.S.*, 139 S. Ct. 2191 (2019) was released on June 21, 2019. Although that was several months after Odrick's plea, it was before Odrick's July 2019 sentencing. As a result, this court covered the *Rehaif* issue with Odrick at his sentencing, where Odrick admitted that at the time he possessed the firearm, he knew that he had been convicted of a crime punishable by a year and a day or more. (Crim. Doc. 28, Ex. 14, pp. 12-13)("The Court: Do you agree and stipulate that you knew at the time you possessed a firearm or firearms in this case that you had been previously convicted of a crime where the

---

[7] This argument is based on the Supreme Court's decision in *Rehaif v. U.S.*, 139 S. Ct. 2191 (2019), which held that 18 U.S.C. § 922(g) required proving both that the accused knew that they possessed a gun and that they knew they held the relevant status being prohibited from possessing a gun.

punishment could have been year and day or more? The Defendant: Oh, yes, sir. I do."). This prior admission affirmatively contradicts his current allegation.

Fourth, Odrick claims that Swords failed to discover that he did not know "that the . . . firearm traveled interstate." Knowledge of a firearm's interstate travel is not an element of 18 U.S.C. § 922(g). Therefore, even if Swords failed to discover Odrick lacked that knowledge, this would neither indicate deficient performance nor support a finding of prejudice.

For these reasons, Odrick's third argument—that Swords provided ineffective assistance of counsel at the pretrial stage by failing to conduct an adequate investigation—is without merit.

### 4.   Plea Negotiations.

Odrick's final attempt to show ineffective assistance of pretrial counsel is based on his allegation that Swords failed to attempt to negotiate a more favorable plea agreement. On this point, Odrick presents only broad generalizations and no facts. Neither his allegations nor the record provides support for this argument.

Instead, the record reveals that Sword's recommendation for Odrick to accept the plea agreement satisfied his duty to provide effective counsel. Swords approached the Government and asked for the best terms of a potential plea. (Exhibit 15, ¶ 10). As a result of those efforts, the Government ruled out an offer in the upper

range of the guidelines and on the day of trial offered a middle range sentence recommendation. Nothing in the record indicates that the Government would have offered any shorter sentence after continued negotiations.

Accordingly, Odrick's claim of ineffective assistance of pretrial counsel is due to be **DENIED** without a hearing.

### C.    Sentencing Counsel.

Odrick's claim that his Sentencing Counsel was ineffective is meritless and due for dismissal without a hearing. Odrick claims that Swords failed to "review, discuss, and explain the PSR to [him] prior to the Sentencing." (Doc. 2 p. 20). This claim is flatly contradicted by the record, as Odrick admits that Swords "briefly went through the PSR with Odrick the morning of sentencing." (Doc. 2 p. 20). And that was not the first time. Swords identified two other occasions when he and Odrick reviewed the PSR. On the first of those two occasions, Swords and Petitioner reviewed his criminal history to confirm its accuracy and discussed areas of potential mitigation. They even learned of an error on the part of a state circuit clerk in not sealing his youthful offender record. (Exhibit 15, ¶ 19).

But, even if Odrick had shown Swords failed to review the PSR with him before the sentencing hearing, and that this failure itself demonstrated constitutionally deficient performance, Odrick nonetheless failed to show prejudice

resulting therefrom. He identifies no errors in the PSR that Swords failed to address. He identifies no objections that Swords failed to make but which would have been successful if made. In sum, Odrick identified nothing that would have changed if Swords had more thoroughly reviewed the PSR with him.  For these reason, Odrick's claim that Sentencing Counsel was ineffective is due to be **DENIED** without a hearing.

## IV.   Conclusion

For the foregoing reasons, Odrick's § 2255 motion to vacate, set aside, or correct a sentence is due to be **DENIED** in part. As for Odrick's claim that his post-conviction counsel failed to file a notice of appeal as requested, the Court will hold a limited evidentiary hearing and hear argument on this issue at a date to be scheduled.

Rule 11 of the Rules Governing § 2255 Proceedings requires the Court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. *See* Rule 11, Rules Governing § 2255 Proceedings. This Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to

deserve encouragement to proceed further." *Miller-EL v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack*, 529 U.S. at 484). This Court finds that Odrick's claims do not satisfy either standard.

A separate order consistent with this opinion will be entered.

**DONE** and **ORDERED** on June 7, 2023.

L. Scott Coogler
United States District Judge

211854